IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MEGAN KEENE GORHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-cv-433 (MTT) |
| | ) |
| HOUSTON HEALTHCARE SYSTEM, INC. | ) |
| | ) |
| Defendant. | ) |

**ORDER**

In this Title VII retaliation case, Plaintiff Megan Keene Gorham contends she was terminated by Defendant Houston Healthcare in 2014 because she engaged in protected activity. Doc. 1 ¶¶ 64-88. Because Gorham did not file her charge of discrimination until July 21, 2021, Houston Healthcare moved to dismiss Gorham's claim as untimely. Doc. 4. Gorham responded that because Houston Healthcare actively deceived her regarding the reasons for her termination, equitable tolling saves her claim. Doc. 7. The Court allowed Gorham's retaliation claim to proceed to discovery to determine whether equitable tolling was warranted. Doc. 13. Houston Healthcare now moves for summary judgment. Doc. 19. For the reasons that follow, Houston Healthcare's motion for summary judgment (Doc. 19) is **GRANTED**.

## I. BACKGROUND[1]

Houston Healthcare employed Gorham as a Registration Representative from 2011 until her termination in 2014.  Docs. 19-2 ¶ 1; 23-1 ¶ 1.  In 2014, a Houston Healthcare physician began sexually harassing Gorham during her scheduled shifts.  Docs. 19-2 ¶ 2; 23-1 ¶ 2.  Gorham eventually reported these incidents to human resources who attempted to adjust Gorham's schedule to minimize contact between Gorham and the offending physician.  Docs. 19-2 ¶¶ 2-3; 23-1 ¶¶ 2-3.  Although Gorham disputes the extent to which she discussed her sexual harassment allegations with coworkers, she testified in her deposition she at least asked coworkers about the physician's whereabouts when the two were scheduled on the same shift so Gorham could avoid him.  Docs. 19-2 ¶ 4; 23-1 ¶ 4.

On September 22, 2014, Gorham was involved in an altercation with a patient which led that patient to file a complaint against Gorham.[2]  Docs. 19-2 ¶ 5; 23-1 ¶ 5.  The following day, on September 23, 2014, Houston Healthcare issued Gorham a "Corrective Action Form" for "behavioral" issues.  Docs. 10-1; 19-2 ¶ 6; 23-1 ¶ 6.  In addition to the patient's complaint, the "Corrective Action Form," which Gorham signed, stated that Gorham "discussed prior issues" concerning the physician with co-workers after she had been told by human resources to keep the matter confidential, as well as one occasion where Gorham had to swap schedules with another employee due to a personal conflict which resulted in Gorham working the same shift as the physician in question.  Docs. 10-1; 19-2 ¶ 7; 23-1 ¶ 7.  In other words, the "Corrective Action Form"

---

[1] Unless otherwise stated, all facts are undisputed.

[2] Although Gorham disputes whether she was at fault in the underlying patient altercation, it is undisputed that the patient filed a complaint against Gorham.  Doc. 23-1 ¶ 5.

made clear that Gorham was being disciplined for misconduct which she now contends was protected activity.  As a result of these alleged infractions, Houston Healthcare gave Gorham a "written warning – level 2" and placed her on probation for a year.  Docs. 10-1; 19-2 ¶ 7; 23-1 ¶ 7.  Finally, the "Corrective Action Form" noted further violations could "result in further corrective action up to and including termination of employment."  Docs. 10-1; 19-2 ¶ 7; 23-1 ¶ 7.

After that meeting, Gorham decided to appeal the disciplinary action, and contacted a co-worker to write a statement to accompany that appeal.  Docs. 19-2 ¶ 9; 23-1 ¶ 9.  On September 24, 2014, Gorham's supervisor called to inform Gorham that she was fired.  Docs. 19-2 ¶¶ 10-11; 23-1 ¶¶ 10-11.  Although Gorham's supervisor asked Gorham to meet in person to discuss the reasons for her termination, that meeting never took place due to confusion about the location of the meeting.[3]  Docs. 19-2 ¶¶ 12-14; 23-1 ¶¶ 12-14.  Consequently, Gorham never received a copy of her "Termination Form."  Docs. 19-2 ¶ 15; 23-1 ¶ 15.  The "Termination Form," the contents of which Gorham does not dispute, states:

> On 9/23/14 [Gorham] received corrective action for violation of HHC behavioral standards with patient interaction and for violation of directive to have no further conversations with other staff regarding [the physician]. After the corrective action was given, [Gorham] called other staff members to elicit them in contesting management decision for corrective action. [Gorham] continued to violate HHC behavioral standards after having the standards reviewed and signed during corrective action on 9/23/14. Termination of employment for lack of ethical behavior, lack of respect for authority and peers, and inability to accept responsibility for actions.

---

[3] Surprisingly, Gorham contends that "whether the supervisor told Ms. Gorham that the purpose of the requested meeting was to discuss the reasons for Ms. Gorham's termination" is a disputed fact.  Doc. 19-2 ¶ 12.  That is not true.  Gorham testified in her deposition that her supervisor "told me that they were terminating me, and I was very surprised, and I had asked why, and they said they would discuss it when I got there."  Doc. 21 at 33:3-6.  In any event, the dispute, to the extent there is one, is immaterial.

Docs. 12-4 at 2; 19-2 ¶ 15; 23-1 ¶ 15 (citing Doc. 12-4). In lieu of Gorham's signature, the form states Gorham "refused to come in as directed." Doc. 12-4 at 2.

Gorham testified that she had a couple theories as to why she was fired. Docs. 19-2 ¶ 17; 23-1 ¶ 17. Specifically, Gorham testified that:

> So I had come up with a couple of scenarios of why, but it was because I wanted to appeal or do the grievance, or if it was because of the patient still something else was said about that, it was because I was 7 months' pregnant, *it was because of the doctor, if it was because of the harassment case, I did not know though why*.

Doc. 21 at 38:25-39:7 (emphasis added). Thus, Gorham, at the time of her termination, thought she could have been fired for reporting sexual harassment to human resources, among other reasons. Docs. 19-2 ¶¶ 17-18; 23-1 ¶¶ 17-18.

After her termination, Gorham filed for unemployment benefits with the Georgia Department of Labor ("DOL"). Docs. 19-2 ¶ 20; 23-1 ¶ 20. As part of this process, the DOL questionnaire asked Gorham the grounds for her termination, and if Gorham believed that reason was untruthful, then what Gorham believed to be the true cause of her discharge. Docs. 19-2 ¶¶ 21, 23; 23-1 ¶¶ 21, 23. Regarding the stated grounds for her termination, Gorham responded:

> No, attempted to come in and find out and sign as instructed. On the way there was told they were going no further with this, that I needed to turn in my badge without a reason why.

Docs. 19-2 ¶ 22; 23-1 ¶ 22. But Gorham thought she was discharged because:

> I have filed a sexual harassment case against a Doctor there that they did not terminate or move, also 7 months pregnant.

Docs. 19-2 ¶ 24; 23-1 ¶ 24. Thus, when Gorham applied for unemployment benefits, she thought her "sexual harassment case" was a reason for her termination.

The DOL, as part of its unemployment benefits determination, also reviewed Gorham's employment records submitted by Houston Healthcare, which included the "Corrective Action Form" and "Termination Form" discussed above. Docs. 19-2 ¶ 25; 23-1 ¶ 25. The DOL ultimately convened a telephonic hearing on October 31, 2014, of which no transcript exists, and although Gorham was present, she claims she remembers few details of what transpired or even whether she was given the opportunity to ask questions. Docs. 19-2 ¶¶ 26-27; 22-7 at 1; 23-1 ¶¶ 26-27. In any event, the DOL ultimately determined Gorham was "at fault in her discharge from employment" and denied Gorham unemployment benefits. Docs. 19-2 ¶ 28; 22-7 at 2; 23-1 ¶¶ 28.

Over six years later, in April 2021, Gorham applied to work for Houston Healthcare once again. Docs. 19-2 ¶ 29; 23-1 ¶ 29. Once Gorham applied, she received an email from Houston Healthcare that said she was "not eligible for rehire." Docs. 19-2 ¶ 30; 23-1 ¶ 30. Gorham appealed that decision, and the appeal was denied. Docs. 19-2 ¶¶ 31-32; 23-1 ¶¶ 31-32. Seeking to understand why, Gorham spoke with Heather Stewart, Houston Healthcare's human resources employee relations coordinator, on June 15, 2021. Docs. 19-2 ¶¶ 33-34; 23-1 ¶¶ 33-34. During that phone call, which Gorham recorded, Stewart relayed the contents of Gorham's 2014 "Termination Form," and further reiterated that Gorham's "not eligible for rehire" status would remain unchanged. Docs. 19-2 ¶¶ 30, 35-37; 23-1 ¶¶ 30, 35-37.

Gorham submitted her Charge of Discrimination to the EEOC on July 21, 2021. Docs. 19-2 ¶ 39; 23-1 ¶ 39. On September 9, 2021, the EEOC dismissed Gorham's charge as untimely. Docs. 19-2 ¶ 41; 23-1 ¶ 41. On December 6, 2021, Gorham filed

her complaint, which alleged two counts of Title VII retaliation, and Houston Healthcare subsequently moved to dismiss. Docs. 1; 4. The Court dismissed Gorham's retaliation claim stemming from Houston Healthcare's refusal to rehire her in 2021 because "the employer's denial of that request does not create a new cause of action," but allowed Gorham's retaliation claim stemming from her 2014 termination to proceed to discovery for the limited purpose of determining whether equitable tolling was warranted. Doc. 13 at 6, 8. Houston Healthcare now moves for summary judgment. Doc. 19.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

In a non-deferral state like Georgia, a plaintiff must file an EEOC charge within 180 days of the last alleged discriminatory act.  *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) (citing 42 U.S.C. § 2000e–5(e)(1)).  Here, Gorham did not file her charge of discrimination until July 21, 2021—nearly seven years after her

termination.  Docs. 19-2 ¶¶ 10-11, 39; 23-1 ¶¶ 10-11, 39.  Thus, the only question is whether equitable tolling applies to save Gorham's untimely Title VII retaliation claim.

Equitable tolling is an extraordinary remedy and thus must be applied sparingly. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Generally speaking, equitable tolling can relieve a plaintiff from the clear requirements of Title VII only if (1) the plaintiff diligently pursued her rights, and (2) some extraordinary circumstance prevented timely filing.  *Villarreal v. R.J. Reynolds Tobacco Company*, 839 F.3d 958, 971 (11th Cir. 2016).  However, when a plaintiff alleges fraud or active misrepresentation by the defendant, it seems a different standard applies.[4]  *Id.* at 972 (discussing *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975)).[5] In that event, "the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for [her] rights."  *Id.* (quoting *Reeb*, 516 F.2d at 930).

**A. Houston Healthcare Did Not Actively Deceive Gorham**

In *Reeb*, the employer, through a letter to the female employee, told the employee her monthly employment contract could not be renewed for financial reasons,

---

[4] Rather than a different standard, perhaps "active deception" could be an "extraordinary circumstance" under the *Villarreal* standard.  *See Jackson v. Astrue*, 506 F.3d 1349, 1355 (11th Cir. 2007) ("[T]raditional equitable tolling principles require that the claimant demonstrate *extraordinary circumstances*, such as fraud, misinformation, or deliberate concealment.").  But that is not how *Villarreal* distinguished *Reeb*, and subsequent unpublished authority from the Eleventh Circuit suggest *Villarreal* and *Reeb* are distinct standards.  *Villarreal*, 839 F.3d at 972 (Absent "active deception," the "general test applies [and] a plaintiff seeking equitable tolling must prove diligence and extraordinary circumstances."); *Mesones v. Estevez*, 2021 WL 3721324, at *3 (11th Cir. Aug. 23, 2021) ("Thus we must address which standard, *Villarreal* or *Reeb*, applies. … Because the *Villarreal* standard applies, Plaintiffs must prove both diligence and extraordinary circumstances.").  Accordingly, the Court will treat *Villarreal* and *Reeb* as distinct standards.  Either way, the outcome is the same.

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

and that effective immediately, she was terminated. 516 F.2d at 925-26. The employee's position was filled only two months later "by an allegedly less qualified male," although the employee was not aware of that fact until the time to file a charge of discrimination had passed. *Id.* at 926. The Fifth Circuit reasoned that because "[s]ecret preferences in hiring and even more subtle means of illegal discrimination … are unlikely to be readily apparent to the individual discriminated against," equitable tolling was warranted, at least until the facts to support a charge of discrimination "were apparent or should have been apparent to a person with a reasonably prudent regard for his rights." *Id.* at 931.

Unlike *Reeb*, where the employer affirmatively misrepresented the reason for termination, Houston Healthcare did nothing of the sort. Rather, human resources informed Gorham by telephone that she was terminated, and asked Gorham to come in to discuss the reason for her termination. Docs. 19-2 ¶¶ 10-12; 23-1 ¶¶ 10-12. But because Gorham disagreed with her supervisor about the location of the meeting, that meeting never took place. Docs. 19-2 ¶¶ 12-14; 23-1 ¶¶ 12-14. Gorham candidly admits Houston Healthcare never lied to her about the reason or reasons for her termination. Docs. 19-2 ¶ 38; 23-1 ¶ 38. And while Gorham's recollection is hazy with respect to the DOL proceedings, it is undisputed that Houston Healthcare submitted the "Corrective Action Form" and "Termination Form" as part of those proceedings, both of which referenced Gorham's reports of sexual harassment as a basis for her discipline and ultimate termination. Docs. 19-2 ¶¶ 25-27; 23-1 ¶¶ 25-27. In short, there is no evidence that Houston Healthcare deceived Gorham.

Moreover, while *Reeb* held equitable tolling was warranted in cases where the employer "misled the plaintiff or attempted to conceal the alleged discrimination," tolling continued only until the facts to support a charge of discrimination "were apparent or should have been apparent to a person with a reasonably prudent regard for his rights." 516 F.2d at 931.  So, even assuming Houston Healthcare misled Gorham in some way, Gorham's equitable tolling argument still fails because the record establishes the reasons for her discharge were apparent to her by the time the DOL held a telephonic hearing on October 31, 2014.  Docs. 19-2 ¶¶ 26-27; 22-7 at 1; 23-1 ¶¶ 26-27.  Going into that hearing, Gorham thought that her "sexual harassment case" was a reason for her termination.  Docs. 19-2 ¶ 24; 23-1 ¶ 24.  The issue litigated in that proceeding was whether Gorham's termination was for cause, and the reasons for her termination—as stated in the "Corrective Action Form" and "Termination Form"—were part of the DOL record.  Docs. 19-2 ¶ 25-26, 28; 23-1 ¶ 25-26, 28.  It is inconceivable that Gorham could litigate the cause of her termination and not know the reasons Houston Healthcare gave in its defense of her unemployment compensation claim.  Clearly, those facts would have been apparent, and if for some reason they were not, a reasonably prudent person seeking to prove she did nothing wrong would have asked why she was discharged, particularly if she thought she was fired because of a "sexual harassment case."  Docs. 19-2 ¶ 24; 23-1 ¶ 24; *Reeb*, 516 F.2d at 930.

But the overarching point is that Houston Healthcare, as Gorham admits, never lied.[6]  Docs. 19-2 ¶ 38; 23-1 ¶ 38.

---

[6] Gorham also cites *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023 (11th Cir. 1994) and *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876 (5th Cir. 1991) to support her argument that Houston Healthcare deceived or misled her.  Doc. 23 at 10-13.  In *Sturniolo*, the plaintiff, who was over forty years old, was informed that he was fired as part of a company-wide downsizing program, and that his position

**B. Gorham Did Not Diligently Pursue Her Rights**

Gorham argues no extraordinary circumstances to justify equitable tolling other than her claim that Houston Healthcare actively misrepresented the reasons for her termination, and as discussed, that argument fails. But even if Gorham did point to some other extraordinary circumstance, Gorham's lack of diligence precludes equitable tolling under the *Villarreal* standard. 839 F.3d at 971.

First, mere passage of time demonstrates the absence of diligence—generally "a plaintiff who does nothing for two years is not diligent." *Id.* at 972. Outside of Gorham's contacts and conversations with human resources on September 24, 2014, it is undisputed that Gorham did not attempt to ascertain the reasons for her termination until over six years later when she sought reemployment with Houston Healthcare. Docs. 19-2 ¶ 19; 23-1 ¶ 19. She sat on her hands even though she suspected she could have been fired for reporting sexual harassment to Houston Healthcare. Docs. 19-2 ¶ 17; 23-1 ¶ 17. And when applying for unemployment benefits, she confirmed that belief. Docs. 19-2 ¶ 24; 23-1 ¶ 24. Yet, while litigating the cause of her termination, she claims to have made no effort to determine what the cause was. Docs. 19-2 ¶¶ 26-27; 22-7 at 1; 23-1 ¶¶ 26-27. When, on June 15, 2021, Gorham did get around to asking why she was discharged, Houston Healthcare's human resources employee relations coordinator relayed the contents of the 2014 "Termination Form" to Gorham. Docs. 19-2 ¶¶ 34, 37; 21 at 74:5-7; 23-1 ¶¶ 34, 37. Contrary to Gorham's assertion that this was a "gotcha" moment, Houston Healthcare's willingness to read the

---

was eliminated, only to later learn the company hired a younger person to fill his previously held job. 15 F.3d at 1025. Similarly, in *Rhodes*, an older employee was told that he was fired as part of a downsizing effort, and learned later that the company hired a younger person to replace him. 927 F.2d at 876. In both cases the employer actively misrepresented facts. That didn't happen here.

-11-

"Termination Form" verbatim to Gorham after she called to challenge her eligibility for rehire status underscores how easy this information was to get if Gorham had only asked.  But because Gorham did not do so until well over six years after her termination, she is not entitled to equitable tolling.  *Villarreal*, 839 F.3d at 971-72.

## IV. CONCLUSION

For the reasons discussed above, Houston Healthcare's motion for summary judgment (Doc. 19) is **GRANTED**.

**SO ORDERED**, this 12th day of May, 2023.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT